**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Stewart D. Roll, et al.,** | ) | **CASE NO. 1:16 CV 2487** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Medical Mutual of Ohio,** | ) | **<u>Memorandum of Opinion and Order</u>** |
| | ) | |
| **Defendant.** | ) | |

<u>**Introduction**</u>

This matter is before the Court upon defendant's Motion to Dismiss Plaintiff's

Amended Complaint (Doc. 18).  For the following reasons, the motion is GRANTED.

<u>**Facts**</u>

Plaintiffs Stewart and Bonnie Roll filed this First Amended Complaint against

defendant Medical Mutual of Ohio.  Plaintiffs are insured by a Policy of medical insurance

issued by defendant. By letter of April 22, 2016, defendant denied a request to pay for Stewart

Roll's surgery at the highest benefit level where the surgery would have been performed at an

out-of-network facility.  Defendant based the denial on the fact that the surgery could be

1

performed at an in-network facility.  Plaintiffs allege they had elected to have Stewart Roll's surgery and hospital stay at University Hospital's (UH) Main Campus, an out-of-network facility, because while Stewart's colorectal surgeon (Scott Steele, M.D.)[1] was treated as in-network under the policy, the doctor did not have privileges to perform the surgery at the Cleveland Clinic Foundation's (CCF) Main Campus, an in-network facility, or other UH facilities which were treated as in-network.   Plaintiffs did not appeal the decision.  In a May 2, 2016 correspondence to defendant "pertain[ing] to [the April 2016] adverse benefit determination," Stewart Roll requested "all documents, records and other matter in written and electronic form relevant to this denial, including but not limited to..." The letter lists eight categories of documents:

> 1. All contracts and other agreements for the last twenty years between Medical Mutual (MM) and Cleveland Clinic Foundation (CCF) which makes reference to: (a) MM treating all CCF hospitals as in-network; (b) MM treating any other non-CCF hospitals as out-of-network.

> 2. All contracts and other agreements for the last twenty years between UH Case Medical Center (UH) and MM which makes reference to: (a) MM treating any UH hospital as in-network; (b) MM treating any UH hospital as out-of-network;

> 3. All contracts and other agreements between MM and Scott R. Steele, M.D., which identifies Dr. Steele as being an MM in-network medical doctor;

> 4. MM's detailed criteria which led to this decision;

> 5. All communication between MM and Medicare about CCF's treatment as an in-network provider, and MM's treatment of any other hospital system as out-of-network;

> 6. MM's allowed CCF fee for the expected medical procedures for the patient's

---

[1]     Dr. Steele was affiliated with UH Main Campus before joining the CCF in October 2016. Plaintiffs attach to the Amended Complaint a copy of the Cleveland Clinic website article introducing Dr. Steele. (Doc. 15 Ex. 1)

planned May 9, 2016 surgery;

7. MM's allowed UH fee for the expected medical procedures for the patient's planned May 9, 2016 surgery;

8. MM's reimbursement fee for MM gold and Medicare Plan A only patients to: (a) CCF, and (b) UH for the expected medical procedures for the patient's planned May 9, 2016 surgery.

By letter of June 24, 2016, defendant responded to Steward Roll by providing the detailed basis of its denial. As to request numbers 1 and 2, defendant explained that the requested documents were confidential and proprietary and not relevant to its decision.[2]

Plaintiffs allege that defendant's anti-competitive behavior has been the subject of a previous complaint filed by the United States and a local newspaper article.[3]

The First Amended Complaint sets forth the following claims.  Count One alleges that the failure to produce the documents is contrary to defendant's obligation to do so and has prevented plaintiffs from appealing the denial of their request to treat the surgery as in-network. Plaintiffs seek injunctive relief requiring the production of the documents as well as

---

[2]  The letters are attached to the First Amended Complaint and the Policy and letters are attached to defendant's Motion to Dismiss. In ruling on a Rule 12(b)(6) motion, "a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein without converting the motion to one for summary judgment." *Gavitt v. Born,* 835 F.3d 623 (6th Cir. 2016) (citing *Kreipke v. Wayne State Univ.,* 807 F.3d 768, 774 (6th Cir. 2015) and *Bassett v. Natl. Collegiate Athletic Assn.,* 528 F.3d 426, 430 (6th Cir. 2008) ).

[3]  Plaintiffs attach to the Amended Complaint, as Exhibits 2-5, copies of a 2007 civil complaint (*David Lowman v. Life Insurance Company of North America*), a 1998 judgment in *United States v. Medical Mutual of Ohio,* a 1999 Response of U.S. to Public Comment in Case No. 98 CV 2192, and a 2015 Plain Dealer article regarding competition in Ohio's insurance industry.

3

damages. Count Two alleges that defendant's discrimination in reimbursement rates for the same surgery and hospital stay has an anti-competitive effect on the prices charged by hospitals within the relevant market and has an adverse impact on which surgeons the plan beneficiaries and participants may use, in violation of 15 U.S.C. § 1, 2, and 14. Count Three alleges that the Policy is susceptible of more than one interpretation and defendant should have interpreted it so as to provide plaintiffs with the maximum level of cost reimbursement and coverage.

This matter is now before the Court upon defendant's Motion to Dismiss.

**<u>Standard of Review</u>**

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) ).  In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc*., 123 F.3d 394, 400 (6th Cir.1997).  As outlined by the Sixth Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative

4

> level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at
> 555, 570.  A plaintiff must "plead[ ] factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft
> v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). Thus, *Twombly* and *Iqbal* require

that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face based on factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.  *Twombly*, 550

U.S. at 570; *Iqbal,* 556 U.S. at 678.  The complaint must contain "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly,* 550 U.S. at 555.

### Discussion

Defendant maintains that plaintiff's claims fail as a matter of law.

### (1) Count One

Count One does not identify a legal basis for the claim, but seeks injunctive relief

requiring defendant to produce the documents and damages "in an amount equal to the costs

incurred by [plaintiffs] because of the Denial [to treat the surgery as in-network]."  Defendant

asserts that the plain language of the applicable ERISA regulations bars the claim. This Court

agrees.

The ERISA regulations state that a plan must provide documents to the claimant upon

request "relevant to the claimant's claim for benefits."  29 C.F.R. § 2560.503-1(h)(iii).

Courts have recognized that the regulation applies only to a "claim for benefits under the

plan." *Prince v. Proctor & Gamble Co.,* 2014 WL 2154890 (S.D.Ohio May 22, 2014).  While

the original Complaint stated that the purpose of the request for documents was to support an

antitrust claim (Compl. ¶ 10), that allegation has been omitted and an explanation of how the sought after documents are relevant to the denial of the claim for benefits is not provided. The regulations state that a document "shall be considered 'relevant' to a claimant's claim if" it

> (i) Was relied upon in making the benefit determination;

> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;

> (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or

> (iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

29 C.F.R. § 2560.503-1(m)(8).  Defendant's June 2016 letter provided the basis for its denial and declined to produce the other documents because they were proprietary and not relevant. (Doc. 18 Ex. 1- D) Because the documents do not fall within the regulation's definition of "relevant to the claim," ERISA was not violated. Relevance under the regulations is narrowly construed, *Prince, supra,* and plaintiffs do not state a claim under ERISA for production of the documents in the absence of any allegation meeting the high standard of relevance.

Plaintiffs argue that 29 C.F.R. § 2560.503-1(m)(8)(ii) and (iii), above, significantly expand the definition of what documents are relevant to a claimant's request for benefits. Plaintiffs state that, hypothetically, one of the requested documents could be an agreement between defendant and CCF that defendant would not treat any other hospital system's Cleveland location within a certain radius of CCF's main campus as being in-network, and that document would fit within the regulations' definition of relevant documents. Plaintiffs

additionally assert, relying on the allegations of Count One, that they have brought this action to recover benefits due under the Plan.

Plaintiffs' assertions are not persuasive. In discussing Count Three, plaintiffs maintain that they are not bringing an ERISA claim but rather a breach of contract claim. (Doc. 19 at 10) (Count Three "is a breach of contract claim. Contrary to MMO's contention it is not an ERISA claim.") Thus, plaintiffs acknowledge that they are not making a claim for benefits under ERISA.  Furthermore, plaintiffs do not dispute that they did not appeal the denial of their request.[4] As stated earlier, where there is no action to recover benefits due under the plan, the count to produce documents fails to state a claim. Even assuming the request had a proper purpose (i.e., to make a claim for benefits under the plan), plaintiffs allege no factual basis to explain how 20 years of contracts fit into the categories outlined in the regulations. Plaintiffs' hypothetical is insufficient because the hypothetical contract was not used to make the benefits decision, was not generated or submitted as part of that process, would not demonstrate compliance with administrative processes, or would not constitute a statement or policy or guidance with respect to the plan concerning a denied treatment option or benefit for the claimant's diagnosis. In its June 2016 letter, defendant identified the documents it considered in the claims process and produced those documents.  (Doc. 18 Ex. 1- D)[5]

---

[4]     A plan participant must exhaust his administrative remedies prior to commencing suit. *Ravencraft v. UNUM Life Ins. Co. Of Am.,* 212 F.3d 341, 343 (6th Cir. 2000). Plaintiffs' bare statement that they were prevented from appealing the denial is unsupported by any facts showing an effort to appeal.

[5]     In fact, plaintiff's brief addressing Count Two makes clear that the contracts are sought for the purpose of establishing the antitrust claim. (Doc. 19 at 8-9) ("MMO's mantra that these Agreements are confidential and proprietary, and only for those reasons they should not be disclosed, suggest the likelihood that

In a sur-reply brief[6], plaintiffs point out that in the June 2016 letter denying the documents request, defendant stated that the "contracts with any provider are confidential and proprietary and are not relevant to your claim."   Plaintiffs reason that defendant could only have determined that the contracts were not relevant to the claim by reviewing those contracts and, therefore, considering them. Plaintiffs' reasoning is non-sensical.  There is no basis to infer that defendant reviewed those contracts to determine whether they were relevant to plaintiffs' claim. Rather, they were not relevant because they were not used in making the benefits decision.  In fact, defendant's response to the request further stated:

> In addition, your benefit book, which is your contract with us, states that: 'The choice of a Provider is yours... Medical Mutual has and retains the sole right to choose which Providers it will contract with, and on what terms, and to amend and terminate those contracts.  Medical Mutual has and retains the sole right to designate Providers as Contracting and/or PPO Network.'

Thus, defendant made clear that the denial of plaintiffs' original request was based upon the Policy. Count One fails to state a claim. Plaintiffs are not entitled to the proprietary documents.

### (2) Count Two

Count Two alleges that "defendant's discrimination in reimbursement rates to its Plan beneficiaries and participants for the same surgery and hospital stays increases those

---

they evince a prohibited antitrust conspiracy... The anti-competitive effect of those Agreements is that CCF's main campus hospital may charge higher rates than those charged by UH's main campus hospital because CCF's patients are reimbursed at an in-network rate while UH's main campus hospital patients are reimbursed at an out of network basis.")

[6]     The Court agrees with defendant that plaintiff's proposed sur-reply brief merely restates arguments previously made in plaintiff's opposition brief.  However, the Court has considered this brief given that it is dismissing plaintiffs' case.

8

beneficiaries' and participants' costs when their surgeon of choice is 'in network' but that surgeon may only perform that surgery at an 'out of network' hospital in the relevant market." (Am.Compl. ¶ 20). The discrimination "has an adverse impact on what surgeons its Plan beneficiaries and participants may use because of the described price discrimination." (Am.Compl. ¶ 21).  And, the

> discrimination in reimbursement rates for the same surgery and hospital stay has an anticompetitive effect on the prices charged by hospitals within the relevant market because if MMO treats them as 'in network' those hospitals may charge higher rates then [sic] 'out of network' hospitals. MMO's discrimination violates 15 U.S.C. 1, 2, and 14.

(Am.Compl. ¶ 22).

Defendants argue that plaintiffs have not plead a viable antitrust claim.  For the following reasons, this Court agrees.

Plaintiffs' brief makes clear that their antitrust claim rests on 15 U.S.C. § 1 alone. "Liability under § 1 of the Sherman Act, 15 U.S.C. § 1, requires a 'contract, combination ..., or conspiracy, in restraint of trade or commerce.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  The complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made."  And, "a bare assertion of conspiracy will not alone suffice to state a claim under the Sherman Act." *Id.*  To state a claim under this section, a plaintiff "must establish that the defendants contracted, combined or conspired among each other, that the combination or conspiracy produced adverse, anti-competitive effects within relevant product and geographic markets, that the objects of and conduct pursuant to that contract or conspiracy were illegal and that the plaintiff was injured as a proximate result of that conspiracy." *Cason-Merenda v. Detroit Medical Center*, 862 F.Supp.2d 603 (E.D. Michigan

9

2012) (quoting *Expert Masonry, Inc. v. Boone County, Ky.*, 440 F.3d 336, 342 (6th Cir.2006)).

Defendants point out that plaintiffs do not allege which competitors MMO conspired with or the terms of the alleged agreement. In their response brief, plaintiffs assert that their pleading fairly establishes the existence of agreements between defendant and CCF and defendant and UH Main Campus with respect to reimbursement rates for surgical procedures which have resulted in discrimination. Plaintiffs maintain that "the anti-competitive effect of those Agreements is that CCF's Main Campus hospital may charge higher rates than those charged by UH's Main Campus hospital because CCF's patients are reimbursed at an in-network rate while UH's Main Campus hospital patients are reimbursed at an out-of-network basis." (Doc. 19 at 8) Plaintiffs were injured by the agreements and conspiracy because they had to pay more to be treated at UH Main Campus hospital than they would have to be treated at CCF Main Campus hospital. Their in-network surgeon did not have privileges at CCF Main Campus on the date the surgery occurred and could only operate at UH Main Campus.

As defendants note, plaintiffs are appearing to allege a conspiracy between defendant and CCF in an effort to injure UH. Plaintiffs were thereby injured because they had to "pay increased costs" as a result of having a surgery at a UH out-of-network facility. But, defendant and CCF are not competitors that can enter into an illegal conspiracy to reduce competition in the health care market.[7] Additionally, as one court has noted, "Absolute choice of physicians and/or hospitals is not guaranteed to customers of a health insurer. This

_____

[7]   In fact, defendant points out that plaintiffs' brief makes no mention of the 1998 judgment which they attached to their Amended Complaint but which actually permits defendants to have "different rate arrangements, reimbursement levels, or payment methodologies for different product lines, for different hospitals, or for different networks or panels of hospitals."  (Doc. 15 Ex. 3)

does not make it an anti-trust violation every time a health insurer decides not to grant in-network status to a healthcare provider." *Bristow Endeavor Healthcare, LLC v. Blue Cross and Bule Shield Association,* 2016 WL 3199520 (N.D. Oklahoma. June 8, 2016). Regardless, the Court agrees with defendant that plaintiffs fail to allege an antitrust injury. Plaintiffs assert that they were injured by the agreements because they had to pay more to be treated at UH Main Campus than if they had they been treated at CCF Main Campus. Their injury is the $20,000 increased cost of having the surgery at UH Main Campus. As stated above, plaintiffs assert that the anti-competitive effect of the agreements is that CCF Main Campus may charge higher rates because it is considered in-network.  But, plaintiffs do not allege that they received services there and paid the higher rate. The injury plaintiffs suffered, the higher out-of-network deductible, did not result from an identified injury to competition in the insurance market.  Rather, plaintiffs' injury arises from the terms of the Policy.

Finally, plaintiffs do not dispute defendant's assertion that the McCarran-Ferguson Act, 15 U.S.C. §1011 *et seq*[8]*.,* applies to the Sherman Act to bar plaintiffs' antitrust claims unless they fall within the limited exception for acts of "boycott, coercion, or intimidation." Plaintiffs contend that the conduct described in their antitrust claim constitutes a "boycott." (Doc. 19 at 9-10) But, a "boycott" refers to concerted activities to obtain benefits in unrelated transactions. *Sanger Ins. Agency v. HUB Intern., Ltd.,* 802 F.3d 732 (5th Cir. 2015); *Hartford*

---

[8]  "The McCarran-Ferguson Act embodies the concept of 'reverse preemption' in the field of insurance in which a state law relating to insurance will preempt and take precedence over a conflicting federal law that does not itself relate to insurance." *The William Powell Co. v. National Indemnity Co.*, 141 F.Supp.3d 773 (S.D. Ohio 2015) (citing *Riverview Health Inst. LLC v. Medical Mut. of Ohio*, 601 F.3d 505, 513–14 (6th Cir.2010)).

11

*Fire Inc. Co. v. California,* 509 U.S. 764 (1993). Here, there is no allegation of unrelated transactions in which defendant was attempting to obtain a benefit.  Regardless, courts have concluded that even an exclusive provider network is not a boycott. *Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.,* 208 F.3d 655 (8th Cir. 2000) (The court held that the boycott exception does not apply to an exclusive provider network.).  Thus, the McCarran-Ferguson Act applies to bar plaintiffs' antitrust claims.

### (3) Count Three

Count Three alleges that the Policy is susceptible of more than one interpretation and defendant should have interpreted it so as to provide plaintiffs with the maximum level of cost reimbursement and coverage.  In particular, plaintiffs allege:

> MMO's Policy is susceptible to more than one interpretation as to when and whether the highest level of cost reimbursement is obtainable when the surgeon Provider is treated by MMO as 'in network' and one of the University Hospitals at which surgery could be performed is 'in network' but University Hospital only allows the type of surgery at issue to be performed at an 'out of network' University Hospital.

 (Am.Compl. ¶26) Plaintiffs were damaged because they had to pay the increased costs given that they were provided the lowest level of cost reimbursement.

Defendant argues that this claim fails for several reasons.  For the following reasons, this Court agrees.

Defendant points out that ERISA does not provide for money damages. Indeed, courts recognize, "ERISA restricts plan beneficiaries to equitable relief with no recourse to money damages....ERISA does not permit plan beneficiaries to claim money damages from plan fiduciaries." *Sterling Collision Centers, Inc. v. Kilduff,* 2016 WL 6873399 (E.D. Michigan November 22, 2016) (citing *Helfrich v. PNC Bank, Kentucky, Inc*., 267 F.3d 477, 481-83 (6th

12

Cir. 2001)).  Next, defendant reasonably notes that plaintiffs' assertion that they could infer

that they would receive the maximum level of coverage for out-of-network surgery is belied

by the fact that they had requested, prior to the surgery, that it be performed by Dr. Steele at

an out-of-network facility.  (Doc. 18 Ex. 1B)

Even construing the claim as an ERISA claim for benefits under the Policy, it fails

because the Policy clearly states that out-of-network procedures do not receive the same level

of coverage as in-network:

> To receive the highest level of benefits at the lowest Out-of-Pocket Maximum
> expense, Covered Services must be provided by PPO Network Providers. When you
> use other Providers who are outside of the PPO Network or who are Non-Contracting
> Providers, you are responsible for any balance due between the Provider's charge and
> the Allowed Amount, in addition to any Deductibles, Copayments, Coinsurance, and
> non-covered charges. All benefits are calculated based upon the Allowed Amount, not
> the Provider's charge. Refer to "How Claims are Paid" for additional information.

(Policy Doc. 18 Exhibit 1-A at 6.) The Policy also states, and as was quoted in defendant's

June 2016 response to plaintiffs' request for documents,

> Medical Mutual has and retains the sole right to choose which Providers it will
> contract with, and on what terms, and to amend and terminate those contracts. Medical
> Mutual has and retains the sole right to designate Providers as Contracting and/or PPO
> Network.

(*Id.* at 54).  The plain language of the Policy is unambiguous.

As stated earlier, plaintiffs maintain that this count is not an ERISA claim, but merely

a breach of contract allegation. Assuming it is, however, ERISA (which plaintiffs

acknowledge applies to the Policy) preempts breach of contract claims. *Christman v.

Coresource, Inc.,*  2015 WL 10791973 (S.D. Ohio  August 26, 2015) (citing *Cromwell v.

Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991) (holding ERISA

preempted Ohio breach of contract claim)). And, as discussed above, even if plaintiffs could

13

assert a breach of contract claim, it fails to state a claim because the only allegation is that the Policy is ambiguous. The Policy, which is referred to and incorporated into the Amended Complaint, is not ambiguous as to the issue of coverage for out-of-network providers.

**Conclusion**

For the foregoing reasons, defendant's Motion to Dismiss Plaintiff's Amended Complaint is granted.

IT IS SO ORDERED.


  /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 3/6/17

14